UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-cv-00835-GNS-LLK

**BRICE JAMAR RHODES**                                                                                          **PLAINTIFF**

**v.**

**Paul Buccieri,** *et al.*                                                                                         **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER FOR FURTHER BRIEFING

This matter is before the Court on Defendants' motion to dismiss for failure to state a claim, or alternatively, for summary judgment, to which Plaintiff responded in opposition, and Defendants replied. [Doc. 18, 22, 24]. The Court referred the matter to the undersigned Magistrate Judge for "findings of fact and recommendations on any dispositive matter." [Doc. 11].

Because it is unclear whether this Court has subject matter jurisdiction over Plaintiff's complaint, the Court will require further briefing from the parties.

### Background facts and procedural history

In or around July 2016, the Jefferson Circuit Court grand jury indicted Plaintiff on seven charges, including the murder of Christopher Jones on May 4, 2016 (Count 1), the murder of Maurice Gordon on May 22, 2016 (Count 2), and the murder of Larry Ordway on May 22, 2016 (Count 3). *Id.*

Plaintiff's complaint alleges "defamation of character" and "slander" [Doc. 1 at PageID.4] based on a 2 minute, 53 second episode shown on A & E Court Cam on July 16, 2020. On March 17, 2022, Plaintiff submitted into the record two compact disc (CD) copies of the episode. [Doc. 23]. A & E Court Cam is hosted by Dan Abrams.

The episode began with narration by Abrams [00:00 - 00:49], followed by an exchange between Plaintiff and Jefferson Circuit Judge Amber Wolf [00:50 – 01:21], more narration [01:22 – 01:53], an exchange between Plaintiff and Jefferson Circuit Judge Charles Cunningham [01:54 – 02:37], and final narration [02:38 – 02:53]. As the narration progressed, written summaries appeared on the screen. As

detailed below, Plaintiff's defamation claims appear to be based primarily on the written summaries (rather than the narration itself).

Below is this Report's attempt to "transcribe" the content of the narration plus written summaries (written summaries in *italic*, appearing at the moment they appeared in the narration):

We now take you to the Jefferson Circuit Court in Louisville, Kentucky.  This is Brice Rhodes, a man very familiar with the Louisville courts.

*BRICE RHODES*
*CHARGES*
*April 2016 Murder*
*May 2016 Double Murder*

He's been behind bars since he was charged with the murder of one man in 2016 and two teenage brothers a month later, fearing they would tell police of his involvement in the first crime.

*LOUISVILLE, KY          JUNE 1, 2016*
*ATTORNEY:  MAN ACCUSED OF SLAYINGS SPAT ON ME*

Since that time, Rhodes has been locked up awaiting trial,

*LOUISVILLE, KY          OCTOBER 25, 2016*
*RHODES NOW ACCUSED OF THROWING URINE ON JAILER*

but moving forward has been challenging due to Rhodes' disruptive behavior,

*LOUISVILLE, KY          FEBRUARY 7, 2020*
*BRICE RHODES CHARGED WITH ASSAULTING A JAIL NURSE*

in court and in jail.  He's even gone so far as to threaten Judge Amber Wolf from behind a spit guard in 2016.

[Exchange between Judge Wolf and Rhodes]

*BRICE RHODES*
*ADDITIONAL CHARGES*
*Terroristic Threatening*
*Intimidating A Participant In The Legal Process*

After this incident, Rhodes was charged with terroristic threatening in the third degree and intimidating a participant in the legal process.

*TRIPLE MURDERER RHODES*
*DISTRUPTS COURT AGAIN*

Four years later, March of 2020, he's at it again. After Judge Charles Cunningham denies his motion to dismiss the murder charges, he questions the Judge's motives.

[Exchange between Judge Cunningham and Rhodes]

Rhodes' attorney has clearly seen this before.

*BRICE RHODES*
*Charges*
*April 2016 Murder*
*May 2016 Double Murder*

Judge Cunningham takes it all in stride because Rhodes remains behind bars and faces life imprisonment if convicted of the crimes. As of this taping, Rhodes' cases are still awaiting trial.

["Transcript" of episode giving rise to Plaintiff's defamation claims].

To the knowledge of this Report, Plaintiff is currently a pre-trial detainee facing charges of triple murder.

**Plaintiff's defamation claims**

In his complaint, Plaintiff alleges that the above episode resulted in "defamation of character" and "slander." [Doc. 1 at PageID.4]. More specifically, when asked to identify the "FACTS of your case" supporting claims, including the "dates on which each event took place," Plaintiff responded:

> On July 16, 2020, … the TV show [A & E] Court Cam … stated I … committed a crime of murder in April 2016. This was false information … [because] Jefferson County court records state that I committed no such crimes in April 2016. [Court Cam host] Dan Abrams knew this was false information and still broadcasted the story. He did so to slander my name with a false narration which has caused me extreme emotional distress, pain and suffering, defamation of character, exploiting my character. This false information has also hinder[ed] me from [receiving] a fair trial by spreading false information, abuse of process. I gave Dan Abrams or [President and Chairman of A+E Networks Group] Paul Buccieri no such permission to use my [illegible]. So, I seek damages for the pain this show has caused me and my family. They have used their TV platform to maliciously attack me. Yes, it is their right under the free speech amendment to report stories. But it's not their right to state false, harmful information to push a narration. To support my claim, I have video evidence of what was said on July 16, 2020, that was false. I also seek damages for humiliation, public ridicule, loss of personal reputation.

*Id.*

In his response, Plaintiff clarifies that his claims are based on two allegedly false statements made during the episode. First:

3

> … Dan Abrams stated on television July 16, 2020, I committed a murder in April 2016 which was false information and because I was only charged for murders in May 2016. Never April! … I also produce documents stating when crimes were committed in May 2016 none in April 2016….

[Doc. 22 at PageID.88]. Second:

> … Defendants also stated I Brice Rhodes spit on my defense attorney which was false based on I am not charged with such a crime. I was never charged with spitting on my attorney. … [There were] … no charges of assault or spitting on an attorney which is non existing false statements.

*Id.* at PageID.88-89.

The statements about which Plaintiff complains occurred primarily in two written summaries that accompanied the narration. Specifically:

> BRICE RHODES
> CHARGES
> April 2016 Murder
> May 2016 Double Murder
>
> LOUISVILLE, KY          JUNE 1, 2016
> ATTORNEY:  MAN ACCUSED OF SLAYINGS SPAT ON ME

["Transcript" of episode giving rise to Plaintiff's defamation claims].

**It is unclear whether this Court has subject matter jurisdiction over Plaintiff's complaint.**

Defendants do not argue that this Court lacks subject matter jurisdiction over Plaintiff's complaint. [Doc. 18]. Nevertheless, unlike most arguments, challenges to subject-matter jurisdiction may be raised by a defendant "at any point in the litigation," and courts must consider them on their own initiative. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

The pro-se Plaintiff filed his complaint on a court-supplied form entitled "Civil Rights Complaint To Be Used by A *Pro Se* Prisoner Under 42 U.S.C. § 1983 or *Under Bivens v. Six Unknown Fed. Narcotics Agents*." [Doc. 1]. This was error because Section 1983 applies only when the claim is that a state government official (e.g., prison guard, police officer) violated a citizen's federal constitutional rights while acting "under color" of state law. *Bivens* applies when the claim is that a federal government official violated a citizen's federal constitutional rights while acting "under color" of federal law. Plaintiff's claims

4

are predicated on Kentucky defamation law, not the United States Constitution, and the Defendants are not state or federal officials.

The basic statutory grants of federal-court subject-matter jurisdiction appear at 28 U.S.C. §§ 1331 and 1332. A plaintiff properly invokes federal question jurisdiction under Section 1331 when he pleads a claim "arising under" the Constitution or laws of the United States. *See Bell v. Hood*, 327 U.S. 678 (1946). Section 1331 does not apply in this case because, as stated above, Plaintiff's defamation claims are predicated on Kentucky defamation law, not the Constitution or laws of the United States.

A plaintiff properly invokes diversity jurisdiction under Section 1332 when he presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. *See* Section 1332(a). The requirement of diversity of citizenship is one of "complete diversity, that is, that no party share citizenship with any opposing party." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000). Citizenship here refers to the state of domicile (as all parties must be citizens of the United States). *Farmer v. Fisher*, 386 F. App'x 554, 557 (6th Cir. 2010). "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

It appears that Plaintiff's complaint satisfies the $75,000 amount in controversy requirement of Section 1332 because he requests $5 million in damages. [Doc. 1 at PageID.6]. However, it is unclear whether there is a complete diversity of citizenship.

## ORDER

Therefore, within 30 days of entry of this Order, the parties shall FILE briefs with the Court addressing the issue of whether this Court has subject matter jurisdiction over Plaintiff's complaint. The briefs shall identify the state in which each party maintains he/it is a "citizen" as contemplated by 28 U.S.C. § 1332.

May 19, 2022

**Lanny King, Magistrate Judge**
**United States District Court**

5